# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JAVIER M. S.-H.,** | Civil Action No. 20-4600 (SDW) |
| Petitioner, | |
| v. | OPINION |
| **JOHN TSOUKARIS, et al.,** | |
| Respondents. | |

**WIGENTON,** District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Javier M. S.-H., filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Also before the Court is Petitioner's motion seeking a temporary restraining order. (ECF No. 3). Following an order to answer, the Government filed a response to the petition and motion (ECF No. 6), to which Petitioner has replied. (ECF No. 10). Petitioner also filed an unopposed motion seeking to seal his medical records. (ECF No. 14). For the following reasons, this Court will grant the motion to seal, deny the petition without prejudice and deny the motion seeking a temporary restraining order as moot in light of the denial of Petitioner's habeas petition.

## I. BACKGROUND

Petitioner is a twenty-four year old native and citizen of Ecuador. (ECF No. 1 at 5). Petitioner entered the United States illegally, without admission or inspection, in February 2017. (Document 1 attached to ECF No. 6 at 52-53). In March 2017, Petitioner was served with a notice to appear and was placed in removal proceedings. (*Id.*). Petitioner is currently detained at the Elizabeth Contract Detention Facility in Elizabeth, New Jersey. (Document 2 attached to ECF No.

1 at 2). On August 21, 2019, Petitioner's various applications for relief from removal were denied by an immigration judge, and he was ordered removed from the United States. (Document 1 attached to ECF No. 6 at 64). Petitioner appealed, but the Board of Immigration Appeals dismissed his appeal, rendering his order of removal administratively final, on March 31, 2020. (*Id.* at 68-70). It does not appear that Petitioner filed a petition for review with the Court of Appeals. (ECF No. 6 at ). Petitioner is thus subject to a final order of removal, and is currently detained pursuant to 8 U.S.C. § 1231(a) and is within the ninety-day removal period during which his detention under the statute is mandatory.

According to expert reports submitted by Petitioner and Petitioner's medical records, Petitioner suffers from hypertension, for which he has long been prescribed Lisinopril, an anti-hypertensive medication. (Document 11 attached to ECF No. 1 at 17). In his report, Petitioner's proposed medical expert opines that Petitioner's hypertension and treatment with this drug place him at "higher risk for severe COVID-19 infection." (*Id.* at 17-18). During Petitioner's detention at the Elizabeth facility, however, Petitioner's hypertension and medication have been routinely monitored. On March 30, 2020, Petitioner reported to the medical center in the facility and was examined for high blood pressure. (ECF No. 2 at 12). Because Petitioner's blood pressure remained high in spite of his Lisinopril prescription, the doctor at the facility determined that a change of medications – to Amlodipine from Lisinopril, was necessary. (*Id.*). The doctor also ordered that Petitioner receive daily blood pressure checks during the transition. (*Id.*). Petitioner was seen again the following day, and as his blood pressure was lower, the course of treatment was continued. (*Id.* at 10). Petitioner returned the same day, stating that he felt unwell and wanted his blood pressure checked. (*Id.* at 7). As it had not substantially changed, his treatment was not changed, though he was provided anti-anxiety medication. (*Id.* at 7-8). Petitioner was seen again

on April 2, 2020, reporting that his new blood pressure mediation caused his hands to shake. (*Id.* at 2-3). The doctor thereafter changed his blood pressure medication to a combination of Lisinopril and Atenolol, and discontinued Amlodipine. (*Id.*). Because Petitioner had symptoms of allergic rhinitis, Petitioner was given an examination that found his lungs to be clear and he was ultimately prescribed nasal spray for his rhinitis. (*Id.*). Petitioner thereafter continued to receive blood pressure checks. (*See, e.g.,* ECF No. 9 at 26, 19).

On April 10, Petitioner returned to the medical department complaining of nausea and diarrhea without accompanying fever or other symptoms. (*Id.* at 24). He was given an examination and ultimately provided with medication to deal with these issues. (*Id.*). On April 13, 2020, Petitioner was seen again for a lump in his groin, which was ultimately determined to be a minor hernia. (*Id.* at 21). Petitioner was treated for the issue. (*Id.*). On April 15, 2020, Petitioner returned to medical, complaining of some form of respiratory issue, dizziness, and nausea. (*Id.* at 16). Petitioner was given an examination, was found to have clear lungs and no fever, and was provided treatment instructions including dietary modifications and increased rest and care in moving from prone to standing positions. (*Id.* at 17). Petitioner returned the following day. (*Id.* at 13). Although Petitioner reported not being in pain and did not have a fever, he did report dizziness, lightheadedness, vertigo, weakness, nausea, and shortness of breath. (*Id.* at 13-14). After a thorough evaluation of Petitioner's condition, including a check of his lungs and heart finding no signs of issue or illness, the treating physician ordered a battery of blood and urinalysis tests. (*Id.*). On April 21, 2020, Petitioner was seen for another check of his vitals. At that time, Petitioner did not have a fever or other symptom of illness, and denied dizziness, chills, or fatigue. (*Id.* at 8). On April 23, 2020, Petitioner returned to medical, and again reported sinus pain, sore throat, a dry cough, shortness of breath, dizziness, nausea, and diarrhea. (*Id*. at 2-3). Based on

Petitioner's continued symptoms and blood test results, the treating physician diagnosed Petitioner with acute sinusitis and gastritis. (*Id.* at 6-7). Petitioner was prescribed both a short test trial of Azithromycin as well as both cough and anti-gastritis medication. (*Id.*). The parties have not provided any medical records for the period after April 23, 2020, and Petitioner makes no mention of further symptoms or illness in his certification provided with his reply.

## II.  DISCUSSION

### A.  Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

### B.  Analysis

In his habeas petition and briefing in this matter, Petitioner argues that he should be released from immigration detention because he believes that he has been subjected to punitive conditions of confinement and has received insufficient medical care in light of his hypertension and the general threat posed by the COVID-19 epidemic. As this Court recently explained in *Jorge*

*V.S. v. Green*, No. 20-3675, 2020 WL 1921936, at *2-4 (D.N.J. Apr. 21, 2020), claims such as Petitioner's

> could be construed in two fashions – as a claim asserting that the jail has been deliberately indifferent to Petitioner's medical needs, or as a claim asserting that the conditions under which he is detained amount to an unconstitutional application of punishment without a supporting conviction in violation of the Due Process Clause. As there is no clear guidance from the Courts of Appeals or Supreme Court on how to adjudicate such claims in light of an ongoing pandemic, many courts have found that insufficient jail action in light of the virus can serve as a basis for release under [the circumstances], *see, e.g,*, *Rafael L.O. v. Decker*, No. 20-3481, 2020 WL 1808843 (D.N.J. Apr. 9, 2020); *Cristian A.R. v. Thomas Decker, et al.*, No. 20-3600 (D.N.J. Apr. 12, 2020); *Basank v. Decker*, No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *Castillo v. Barr*, No. 20-00605, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020); while many others have found that, where the jail takes adequate precautions in light of a given petitioner's medical history, no such relief is warranted. *See, e.g., Dawson v. Asher*, No. 20-409, 2020 WL 1304557 (W.D. Wa. Mar. 19, 2020) (rejecting TRO request because detainees could not succeed on merits of request for relief without at least showing concrete likelihood of actual injury as opposed to mere speculation in light of the legitimate governmental interest in detaining aliens throughout removal proceedings); *Sacal-Micha v. Longoria*, No. 20-37, 2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) (rejecting habeas TRO based on medical conditions of confinement claim as that claim normally must be brought under § 1983, and in any event such a claim is not likely to succeed in the absence of a showing of deliberate indifference to the detainees medical needs); *Lopez v. Lowe*, No. 20-563, 2020 WL 1689874 (M.D. Pa. Apr. 7, 2020) (denying request for TRO by habeas petitioner as he could not establish deliberate indifference to his medical needs).
>
> Turning first to the issue of Petitioner's medical needs, for an immigration detainee to make out a claim for relief based on a jail official's insufficient treatment or deliberate indifference to his medical needs under the Due Process Clause, he must show both that he is subject to a sufficiently serious medical need, and that jail officials have been deliberately indifferent to that need. *See, e.g., Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir.

2017); *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Even assuming that [the threat of] COVID-19 in and of itself is a sufficiently serious need, or that Petitioner's [asthma] is sufficiently serious to oblige the jail to take action to alleviate the risk presented by the virus, success on such a claim would still require Petitioner to show that officials at the jail were deliberately indifferent to that need – i.e. that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This requires that the [respondent] was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . dr[e]w th[at] inference." *Id.* Where some treatment or proscriptive action designed to alleviate the medical need has been provided and the dispute is over the adequacy of the treatment or preventative steps taken, federal courts "are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)). Neither a detainee's subjective dissatisfaction or disagreement with the professional judgment of medical staff as to how best to deal with a medical issue are normally sufficient to establish deliberate indifference. *Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

. . . .

. . . A claim challenging conditions [of confinement] under the Due Process Clause [under the theory that those conditions amount to punishment in the absence of a supporting conviction in turn] has both a subjective and objective component – the objective component requiring a showing that the deprivation involved in the conditions was sufficiently serious, and the subjective component requiring that jail officials act with a sufficiently culpable mind. [*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979))]. The subjective component can be established by showing an express intent to punish; or by showing that the conditions in question were arbitrary, purposeless, or excessive in relation to the ascribed governmental objective. *Id.* Conditions which are reasonably related to a legitimate government interest and which are not excessive in relationship to that interest will therefore not support a claim in the absence of a showing of an express intent to punish. *Id.* at 67-69. . . . [I]mmigration detention is clearly reasonably related to a legitimate government interest –

> the Government's interest in securing those subject to removal proceedings pending the conclusion of those proceedings in order to ensure they do not abscond and that they attend those proceedings while also ensuring they are not a danger to the community in the meantime. *See, Dawson*, 2020 WL 1304557 at *2; *see also Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690-91.

Turning first to Petitioner's conditions of confinement, it is clear that the Government has a legitimate interest in securing aliens to ensure their compliance with removal proceedings and, ultimately, their removal from the United States. *Jennings*, 138 S. Ct. at 836, 844; *Zadvydas*, 533 U.S. at 690-91. This interest is especially strong where the alien is subject to a final order of removal and is within the statutory removal period, as is Petitioner, during which Congress has made the alien's detention *mandatory*, usually concluding with the alien's swift removal from the United States. *Zadvydas*, 533 U.S. at 690-91; *see also* 8 U.S.C. § 1231(a). As Petitioner has not shown an express intent to punish on the part of the detention facility or its staff, he can only succeed on his conditions of confinement claim by showing that the conditions applied to him in immigration detention are arbitrary, purposeless, or excessive in relation to the Government's interest in detaining him.

Having reviewed the record of this matter, it is clear that the conditions to which Petitioner is subject are neither arbitrary, purposeless, nor excessive in relation to that interest. Since March 2020, the facility has taken considerable concrete steps to mitigate and alleviate the risk posed to detainees by the COVID-19 pandemic. Specifically, the facility, which is currently operating below fifty percent capacity to ensure adequate space for social distancing, is following CDC guidelines for detention facilities in relation to testing and preventative action. (Document 1 attached to ECF No. 5 at 46-47). This includes screening each detainee for disabilities, health issues, and any signs of fever or respiratory illness as well as potential prior exposure to COVID-

19 when they first arrive at the facility; the isolation, testing, and treatment of those detainees who have symptoms of COVID-19; the transfer of those presenting severe symptoms to local hospitals for treatment; the placement of those who are asymptomatic but have been exposed to infected individuals in separate, cohorted units where they receive daily temperature and symptom monitoring for at least fourteen days; and COVID-19 testing for those who show known symptoms of the virus. (*Id.* at 46-48). Additionally, the facility has increased the frequency of cleaning and sanitization; provided additional soap for detainee use in each housing area; has supplied both soap and hand sanitizer to the medical clinic, provided COVID-19 related education to inmates and staff; purchased and provided all detainees with masks; limited or eliminated entry into the facility of non-essential personnel, volunteers, and visitors; implemented temperature screening for all staff and vendors entering the facility; and taken steps to ensure detainees remain six feet apart including during meals and during bunk time. (*Id.* at 47-50). Taken in the aggregate, these actions clearly indicate that the facility has taken considerable steps to protect its detainee population, and as a result of these steps, the conditions under which Petitioner is confined are reasonably related to the Government's clear interest in detaining him pending his removal from the United States. These conditions are neither purposeless nor arbitrary – they are directly tailored to address the threat posed by COVID-19 and to protect detainees such as Petitioner from the virus to the extent reasonably possible in a civil detention setting. Petitioner has thus failed to show that the facility and its staff intended to punish him, nor has he shown that the conditions under which he is housed are excessive, arbitrary, or purposeless, and his conditions of confinement claim thus fails to set forth a cognizable basis for habeas relief. *Jorge V.S.*, 2020 WL 1921936 at *2-4.

Petitioner's deliberate indifference to medical needs claim fares no better as a basis for habeas relief. Here, Petitioner's medical records indicate that he has been seen on numerous

occasions by medical staff. These records further indicate that the staff have frequently and directly monitored his high blood pressure, including by adjusting and changing his medication where it is deemed insufficient or when Petitioner has had substantial side effects. Likewise, when Petitioner reported specific illnesses, staff examined and treated him and provided extensive diagnostic testing and medication where warranted. Given these actions by medical staff, Petitioner has failed to show that the facility and its staff have recklessly disregarded a known risk of harm to his health or safety – instead the record indicates that medical staff have consistently sought to treat and resolve his issues and symptoms. Petitioner has thus failed to show deliberate indifference, and his medical claim fails to serve as a cognizable basis for habeas relief. *Jorge V.S.*, 2020 WL 1921936 at *2-4. As Petitioner has failed to show that he has either been exposed to punitive conditions or that the facility and its staff have been deliberately indifferent to his medical needs, Petitioner's habeas petition fails to state a valid basis for habeas relief, and his petition is therefore denied. Petitioner's motion seeking a temporary restraining order is in turn denied as moot in light of the denial of his petition. In light of the privacy interests Petitioner has in keeping his medical records from public view and the fact that immigration habeas matters are in any event normally not available for public access, and given the Government's decision not to oppose the motion, Petitioner's motion to seal his medical records (ECF No. 14) is granted.

## III. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is DENIED WITHOUT PREJUDICE, his motion seeking a temporary restraining order (ECF No. 3) is DENIED as moot in light of the denial of his habeas petition, and his motion to seal his medical records (ECF No. 14) is GRANTED.  An appropriate order follows.

Dated: June 1, 2020                    *s/ Susan D. Wigenton*
                                                    Hon. Susan D. Wigenton,
                                                    United States District Judge